IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN EBNER, individually and on behalf of all others similarly situated,<br><br>            *Plaintiff*,<br><br>   v.<br><br>MERCHANTS & MEDICAL CREDIT CORP., *et al.*,<br><br>            *Defendant*. | CIVIL ACTION<br>NO. 14-06882 |

**PAPPERT, J.**                                                                                      **March 22, 2017**

<u>**MEMORANDUM**</u>

      Plaintiff Susan Ebner, through her proposed class counsel, and Defendant Merchants & Medical Credit Corporation ("MMCC"), have negotiated and agreed to a settlement of this class action. On June 15, 2016 the Court preliminarily approved that settlement. (ECF No. 21.) Class counsel has moved for final approval of the settlement and for attorneys' fees and costs. (ECF No. 32.) For the reasons that follow, the Court grants the motion.

**I.**

      MMCC mailed Ebner debt collection letters in June of 2014 in glassine window envelopes. (Compl. ¶¶ 17, 24.) Her account number was visible through the window. (*Id.* ¶¶ 20, 26.) Ebner filed a class action lawsuit on December 4, 2014, alleging that by disclosing her account number on the face of the envelope, MMCC violated 15 U.S.C. § 1692f(8) of the Fair Debt Collection Practices Act ("FDCPA"). (ECF No. 1.) Section 1692(f)(8) provides that "using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the

mails" is an "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f(8). In *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014), the Third Circuit Court of Appeals explained that the "plain language of § 1692f(8) does not permit [a debt collector's] envelope to display an account number. *Id.* at 303.

On March 21, 2016 Ebner filed a motion for approval of a class settlement and class certification. (ECF No. 17.) The Court held a hearing on June 14, 2016 and entered an order the next day preliminarily approving the class action settlement and directing notice to the class. (ECF No. 21.) The proposed class was defined as "[a]ll persons located in (i) the Commonwealth of Pennsylvania, (ii) the State of New Jersey, or (iii) the State of Delaware according to their last known address . . . from December 4, 2013 through August 1, 2015 . . . who received one or more letters from MMCC seeking to collect a consumer debt for which the . . . account number was visible through the glassine window of the envelope." (*Id.* at 2.)

On September 15, 2016 MMCC moved to continue the final approval hearing and amend the Court's preliminary order approving the class action settlement. (ECF No. 25.) MMCC's motion explained that the number of settlement class members was smaller than initially thought at the time of the Court's preliminary order. MMCC asked for more time to meet the deadlines in the Court's order. Plaintiffs did not oppose this motion. The Court granted MMCC's motion on September 30, 2016. (ECF No. 28.) On December 29, 2016 Ebner filed a motion for final approval of settlement. (ECF No. 31.) The Court held a final approval hearing on January 12, 2017. (ECF No. 34.)

**II.**

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. FED. R. CIV. P. 23(e)(2). Approval is appropriate "only after a hearing and on finding that it is fair, reasonable, and adequate." *Id.* The Court must (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2) assess whether notice to proposed class was adequate; and (3) evaluate if the proposed settlement is fair under Rule 23(e). *See In re Nat'l Football League Players Concussion Injury Litig.*, 775 F.3d 570, 581 (3d Cir. 2014).

**A: Whether Class Certification is Proper**

Rule 23(a) requires Plaintiffs to demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED R. CIV. P. 23(a). Rule 23(b)(3), under which Plaintiffs seek class certification, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). For the reasons that follow, the proposed class may be certified because the Plaintiffs have demonstrated compliance with Rule 23(a) and 23(b)(3)'s requirements.

### i. Rule 23(a) Factors

#### 1. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). There is no minimum number of plaintiffs required to satisfy this requirement; a proposed class exceeding 40 members is sufficient. *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001). Undisputed records in this case indicate that MMCC sent similar letters to approximately 4,802 individuals between December 3, 2013 and August 1, 2015. (Pl.'s Mot., at 7, ECF No. 31-1.)

#### 2. Commonality

Rule 23(a)(2) mandates the showing of "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). This element requires that plaintiffs "share at least one question of fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 527–28 (3d Cir. 2004). "Generally, courts have held that the commonality requirement is satisfied in FDCPA actions when the defendants have engaged in standardized conduct towards members of the proposed class by mailing them allegedly illegal form letters or documents." *Good v. Nationwide Credit, Inc.*, 314 F.R.D. 141, 151–52 (E.D. Pa. 2016). Here, MMC engaged in standardized conduct by sending similar letters to all members of the proposed class. (Pl.'s Mot., at 8.) The common question of fact is whether account numbers were visible through envelope windows. The common question of law is whether MMCC's conduct violates § 1692f(8).

### 3. Typicality

Rule 23(a)(3) requires the class representative's claims to be "typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994). "Where claims of the representative plaintiffs arise from the same alleged wrongful conduct on the part of the defendant, the typicality prong is satisfied." *Good*, 314 F.R.D. at 152. Here, MMCC mailed proposed class members letters with the identical flaw: a visible account number through the envelope window. (Pl.'s Mot., at 9.)

### 4. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The Court must inquire into the "qualifications of counsel to represent the class," and then assess whether there are "conflicts of interest between named parties and the class they seek to represent." *In re Prudential ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 312 (3d Cir. 1998).

Class counsel is qualified and MMCC does not contend otherwise. Connolly Wells & Gray, LLP and Kalikhman & Rayz, LLC have substantial experience in handling not only class actions, but the specific type of claim asserted here. (Pl.'s Mot., at 10.) They have spent more than two years litigating this case. Moreover, district courts in this circuit have appointed them as class counsel for FDCPA settlement claims in the past. *See, e.g.*, *Magness v. Walled lake Credit Bureau et al.*, No. 12-06586

(ECF No. 83) (E.D. Pa. February 18, 2015); *Ebner v. United Recovery Systems, LP et al.*, No. 14-06881 (ECF No. 40) (E.D. Pa. September 9, 2016). The Court is unaware of any conflicts of interest between Ebner and the class she seeks to represent. As explained above, Ebner's claims and those of the proposed class are identical.

### ii. Rule 23(b)(3) Factors

Plaintiffs seek class certification under Rule 23(b)(3) which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

### 1. Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997). It also assesses whether a class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." FED. R. CIV. P. 23(b)(3) advisory committee's note to 1966 amendment. Here, where MMCC sent similarly flawed "debt collection letters to all members of the putative class, common questions of law and fact predominate due to the virtually identical factual and legal predicates of each class member's claim." *Good*, 314 F.R.D. at 154.

### 2. Superiority

The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Warfarin*, 391 F.3d at 533–34. When assessing superiority and

"[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. The Third Circuit has explained that class actions are "fundamental to the statutory structure of the FDCPA." *Weiss v. Regal Collections*, 385 F.3d 337, 345 (3d Cir. 2004). Without the class action device, "meritorious FDCPA claims might go unredressed because the awards in an individual case might be too small to prosecute an individual action." *Id*.

The superiority requirement is "apparent in a case such as this one, in which thousands of individuals seek relief for violation of the FDCPA regarding a substantially identical" flaw in debt collection letters. *Good*, 314 F.R.D. at 154. MMCC mailed thousands of individuals letters that displayed their account number through the envelope window. "Even if a mere fraction of the members of the putative class were to litigate their claims individually, the courts would be significantly burdened by numerous lawsuits. It is more probable, however, that . . . consumers would find it uneconomical to litigate their claims individually, thereby hindering the FDCPA's private attorney-general enforcement mechanism." *Id*. at 155.

## B. Whether Notice to the Class Members was Adequate

"In the class action context, the district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class." *Prudential*, 148 F.3d at 306. Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED.

R. CIV. P. 23(c)(2)(B). Moreover, the notice must "clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *Id.* Rule 23(e) requires notification to all members of the terms of any proposed settlement. FED. R. CIV. P. 23(e). This "notice is designed to summarize the litigation and the settlement" and "to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation." *Prudential*, 148 F.3d at 327.

The Court's order granting preliminary approval of the settlement, (ECF No. 21), directed Ebner to send notice "directly to the members of the Settlement Class." (*Id.*) Ebner also published notice on a dedicated website. (Pl.'s Mot., at 13.) Ebner represented to the Court that of 4,802 notices mailed to potential class members, only 392 were returned as undeliverable—a 91.8 percent penetration rate. (Pl.'s Mot., at 13.). In an affidavit, class counsel Arkady Rayz explained that this rate compares favorably to rates in other class actions on which he has worked. (Rayz Decl. ¶ 73.) At the final approval hearing, class counsel represented to the Court that they received calls from over 100 class members. (Tr. of Hr'g, at 15:2–5, ECF No. 35.) This notice satisfies Rule 23(c)(2)(B) and (e).

**C. Whether the Settlement is Fair**

The Court must determine if the proposed settlement is "fair, adequate, and reasonable," as required by Rule 23(e)(2). *Prudential*, 148 F.3d at 316–17. "Where the parties simultaneously seek certification and settlement approval, the Third Circuit requires 'courts to be even more scrupulous than usual' when they examine the fairness of the proposed settlement." *Good*, 314 F.R.D. at 156 (quoting *Prudential*, 148 F.3d at 317). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975).

The Third Circuit identified nine factors for a district court to consider when determining the fairness of a proposed settlement: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh*, 521 F.2d at 157. In this case, "the mechanical application of the *Girsh* factors is perhaps unfitting, because the settlement affords the class the maximum recovery permitted under the FDCPA's damages cap."[1] *Good*, 314 F.R.D. at 157.

---

[1] The FDCPA provides for a statutory cap on damages. *See* 15 U.S.C. § 1692k(a)(2)(B) ("[I]n the case of a class action" damages are "not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.") Here, one percent of MMCC's net worth is $29,000. (Pl.'s Mot., at 1.)

9

### i. Complexity, Expense, & Likely Duration

This first factor aims to take into account the "probable costs, in both time and money, of continued litigation." *In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001). This case was filed over two years ago. (ECF No. 1.) Class counsel has represented to the Court that "much work has been done by counsel" including document review, written discovery and legal research. (Pl.'s Mot., at 17.) Continued litigation would entail a potential dispute over class certification, a possible summary judgment motion, and trial—not to mention the possibility for appeals from a certification decision or verdict. This factor weighs heavily in favor of settlement.

### ii. Reaction of the Class to the Settlement

Class counsel represents that it mailed 4,802 notices to class members and that no member has objected to the settlement or asked to be excluded. (Pl.'s Mot., at 18.) "[T]hat the settlement is entirely uncontested is evidence of its fairness." *Good*, 314, F.R.D. at 157; *see also Prudential*, 148 F.3d at 318.

### iii. Stage of Proceedings and Amount of Discovery Completed

This factor requires the Court to evaluate whether Plaintiffs had an "adequate appreciation of the merits of the case before negotiating" settlement. *Prudential*, 148 F.3d at 319. "Where, as here, the class obtains the maximum recovery permitted by law, this factor seems inapplicable." *Good*, 314 F.R.D. at 157. Regardless, class counsel represents to the Court that it has exchanged significant information with MMCC during the course of settlement negotiations in addition to engaging in significant written discovery. (Pl.'s Mot., at 19.) This settlement comes after more than two years

of litigation. The Court is satisfied that the parties have sufficient information to evaluate the merits of this settlement, something that favors its approval.

### iv. Risks of Establishing Liability and Damages and Maintaining the Class Action Through Trial and the Ability of the Defendant to Withstand a Greater Judgment

*Girsh* factors four through seven require the Court to "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefits of an immediate settlement." *Warfarin*, 391 F.3d at 537. Class counsel represents that "certification, liability, and establishing damages would all have been hotly contested issues." (Pl.'s Mot., at 20.) Counsel also represents that, based on their experience, MMCC was likely to vigorously oppose class certification and that the "risks associated with class certification increase the risk of maintaining the proposed class." (*Id.*) Because the FDCPA provides for a statutory cap on damages and the proposed settlement provides the maximum recovery available to the class, the ability of the defendant to withstand a greater judgment is inapplicable. Overall, these factors support settlement approval.

### v. Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and the Attendant Risks of Litigation

"The reasonableness of a proposed settlement depends in part upon a comparison of the present value of the damages the plaintiffs would recover if successful discounted by the risks of not prevailing." *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citation omitted)). As explained above, the proposed settlement provides the class the maximum recovery available under the FDCPA. (Pl.'s Mot., at 21.) Moreover, *experienced* class counsel endorses this settlement. Such an opinion is

11

entitled to "significant weight." *Good*, 314 F.R.D. at 159 (quoting *Boone*, 668 F. Supp. 2d at 712).

### III.

#### A.

Class counsel moves for approval of a case contribution award to Ebner of $2,500. MMCC has agreed to pay this separate and apart from the settlement fund. (Pl.'s Mot., at 2, ECF No. 31-2.) Class counsel explained that Ebner "searched her files for relevant records, obtained copies of documents concerning her debt that was the subject of the collection letter and provided information to Class Counsel to assist in [the litigation]." (Rayz Decl. ¶ 122.) The FDCPA "specifically allows a higher recovery for the claims by class representatives than for the claims asserted for the other class members." *Good*, 314 F.R.D. at 160. MMCC does not contest this motion and no class member has objected to this case contribution award.

#### B.

Class counsel also moves for approval of attorneys' fees and costs in the amount of $42,500. Class counsel submitted documents showing that (1) Arkady Rayz, a partner in Kalikhman & Rayz, LLC, worked 28.4 hours at an hourly rate of $415, for a total of $11,786.00 in fees; (2) Gerald D. Wells, III, a partner in Connolly, Wells & Gray, LLP, worked 47.75 hours at an hourly rate of $550, for a total of $26,262.50 in fees; (3) Stephen E. Connolly, a partner in Connolly, Wells & Gray, LLP, worked 13.75 hours at an hourly rate of $550, for a total of $7,562.50 in fees; and (4) Robert J. Gray, a partner in Connolly, Wells & Gray, LLP, worked 3.15 hours at a hourly rate of $550, for a total of $1,732.50 in fees. (Rayz Decl. ¶¶ 89 & 91.) This is a total of $47,343.50 and does not

include the time spent preparing and filing the motions for final approval of the settlement, case contribution award of plaintiff and approval of attorneys' fees and costs. (*Id.*¶ 86.)

The Third Circuit has explained that attorneys' fees under the FDCPA are not a special or discretionary remedy but rather "the Act mandates an award of attorneys' fees as a means of fulfilling Congress's intent that the Act should be enforced by debtors acting as private attorneys general." *Graziano v. Harrison*, 950 F.2d 107, 113 (3d Cir. 1991). MMCC does not contest this motion and no class member has objected to the award of these fees and costs.[2] Moreover, the settlement agreement provides that the attorneys' fees and costs will be paid separate and apart from the settlement fund. (Pl.'s Mot., at 1.) "Even if the Court were to approve less than the [$42,000] negotiated amount, the class would not gain a greater recovery; rather, MMCC would simply keep the money. Under these circumstances, the Court concludes that the proposed attorneys' fees do not offend what is an otherwise fair settlement." *Good*, 314 F.R.D. at 161–62.

An appropriate order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[2] At the final approval hearing, defense counsel explained that she believed the fee award was fair: "I can submit to you that that was an item that was negotiated after the class settlement was agreed to in principle, that's the appropriate way to do it in class litigation so there's no suggestion that one tail was wagging the dog. . . . I can submit to the Court that by virtue of my participation, I do feel like the amount expended was reasonable and necessary, notwithstanding the fact that we didn't blow this case up in a way that some—some of those in our profession like to do." (Tr. of Hr'g, at 32:15–33:15.)